953 A.2d 1231

**Jerry KONIDARIS and Theodora G. Konidaris, Individually and on behalf of all others Similarly Situated, Appellants/Cross–Appellees**

v.

**PORTNOFF LAW ASSOCIATES, LTD, Appellee/Cross–Appellant.**

Supreme Court of Pennsylvania.

Argued March 5, 2007.

Decided Aug. 18, 2008.

56

Bernard S. Rubb, Esq., Sewickley, for Jerry Konidaris, et al. (14 WAP 2006)

Michael P. Malakoff, Esq., Malakoff, Doyle & Finberg, P.C., Pittsburgh, for amicus curiae Association of Community Organizations for Reform Now. (14 WAP 2006)

Kimberly Marie Colonna, Esq., Helen Louise Gemmill, Esq., McNees, Wallace & Nurick, L.L.C., Harrisburg, for Portnoff Law Associates, Ltd. (14 WAP 2006)

Stacey F. Vernallis, Esq., Michael G. McCabe, Goehring, Rutter & Boehm, Pittsburgh, for amicus curiae GLS Capital, Inc. (14 WAP 2006)

Thomas W. Corbett, Jr., Esq., P.A. Office of Attorney General, for Commonwealth of Pennsylvania. (14 WAP 2006)

Helen Louise Gemmill, Esq., Harrisburg, for Portnoff Law Associates, Ltd. (15 WAP 2006)

Bernard S. Rubb, Esq., Sewickley, for Jerry Konidaris and Theodara G. Konidaris. (15 WAP 2006)  ·

Michael P. Malakoff, Esq., Malakoff, Doyle & Finberg, P.C., Pittsburgh, for amicus curiae Association of Community Organizations for Reform Now. (15 WAP 2006)

Stacey F. Vernallis, Esq., Goehring, Rutter & Boehm, Pittsburgh, for amicus curiae, Pittsburgh, for GLS Capital, Inc., (15 WAP 2006)

Ira Weiss, Esq., Pittsburgh, for amicus curiae West Jefferson Hills School District, et al. (15 WAP 2006)

BEFORE: CAPPY, C.J., and CASTILLE, SAYLOR, EAKIN, BAER and BALDWIN, JJ.

## OPINION

Justice BAER.

We granted review in this case to determine whether a retroactive amendment to the Municipal Claims and Tax Liens Act ("MCTLA"), Act of May 16, 1923, P.L. 207, as amended, 53 P.S. § 7101, *et seq.* providing for the imposition on delinquent taxpayers of "reasonable attorney fees" incurred in a school district's collection of taxes, violates the Remedies Clause of the Pennsylvania Constitution,[1] which forbids any act of the General Assembly from impinging a vested right.

---

1. Article I, § 11.  Courts to be open;  suits against the Commonwealth
   All courts shall be open;  and *every man for an injury done him in his lands, goods, person or reputation shall have remedy by due course of law,* and right and justice administered without sale, denial or delay. Suits may be brought against the Commonwealth in such manner, in such courts and in such cases as the Legislature may by law direct.
   PA. CONST. Art. 1, § 11 (emphasis added).

*Ieropoli v. AC & S Corp.*, 577 Pa. 138, 842 A.2d 919, 930 (2004). Concluding that the delinquent taxpayers fail to meet the high burden of demonstrating the unconstitutionality of the statutory amendment, we reverse the decision of the Commonwealth Court in part, reinstate the grant of partial summary judgment entered by the trial court, and remand for further proceedings.

The parties' arguments are closely tied to legislative enactments and judicial interpretations relating to the MCTLA. Accordingly, we begin with a brief history of the MCTLA, and in particular the 2003 retroactive amendment at issue in this case. Between 1923 and February 1996, the MCTLA allowed for the imposition of an attorney collection fee of five percent for claims resulting in a verdict or default judgment. *See* 53 P.S. §§ 7187, 7271 (originally providing for attorney fees of five percent but, as further discussed *infra*, amended by Act of Feb. 7, 1996, P.L. 1, No. 1, § 2, to permit the imposition of "reasonable attorney fees" pursuant to 53 P.S. § 7106). In recognition of the relative increase in legal fees over the century, the General Assembly in 1996 amended § 3 the MCTLA [2] to allow for the collection of "reasonable" attorney fees, rather than limiting the collectable fees to five percent. 53 P.S. § 7106 (as amended by Act of Feb. 7, 1996, P.L. 1, No. 1, § 1). The fee provision thus burdened the delinquent taxpayer with the reasonable attorney fees expended in collecting the taxes, rather than imposing the financial burden of collection on the municipality or school district. Pursuant to the dictates of the amendment, municipalities adopted ordinances and resolutions establishing a schedule of attorney fees. *See* 53 P.S. § 7106(a.1).

Due to an apparent drafting omission, however, the statute as amended in 1996, spoke only to the collection of reasonable attorney fees for "municipal claims" rather than "tax claims." [3] In March 2003, this Court held in *Pentlong*

---

**2.** Utilizing the nomenclature of the statute, we will refer to this provision hereinafter as "§ 3 of the MCTLA," which is set forth at 53 P.S. § 7106.

**3.** "Tax claims" refer to legal claims arising from unpaid general taxes that are levied on all citizens or property owners, including property

*Corp. v. GLS Capital, Inc.,* 573 Pa. 34, 820 A.2d 1240 (2003), that § 3 of the MCTLA did not authorize taxing authorities to collect attorney fees on "tax claims" as opposed to "municipal claims" because the General Assembly failed to provide specifically for the collection of attorney fees expended in the collection of "tax claims."

In response, the General Assembly quickly amended the MCTLA to provide for the recovery from the delinquent taxpayers of reasonable attorney fees expended in the collection of "[a]ll municipal claims, municipal liens, taxes, tax claims and tax liens." 53 P.S. § 7106 (as amended by Act of Aug. 14, 2003, P.L. 83, No. 20, § 2, effective immediately)("Act 20"). Moreover, the General Assembly specified that the amendment "shall be retroactive to January 1, 1996." Act of Aug. 14, 2003, P.L. 83, No. 20, § 10. The legislative history in both the House and the Senate indicate that the amendment was intended to address this Court's interpretation in *Pentlong,* and to provide statutory authorization for taxing authorities to collect reasonable attorney fees expended in the collection of tax claims as well as municipal claims. Senator Jane Orie explained the purposes of the bill:

First, the amendments to the Municipal Claim and Tax Lien Act clarify the rights of municipalities and those who hold rights from municipalities in the process of collecting all claims under this Act. This is especially important to Allegheny County because the Municipal Claim and Tax Lien Act is the principal statute that governs tax collection and municipal claim enforcement actions in the County.

Second, these amendments reaffirm the General Assembly's intentions since the passage of the Act almost 80 years ago. Namely that the recoupment of costs expended to retain competent, experienced legal counsel to enforce claims for payment of taxes is a legitimate ·expense that

taxes imposed by school districts. *See Pentlong Corp. v. GLS Capital, Inc.,* 573 Pa. 34, 820 A.2d 1240, 1253 (2003). In contrast, "municipal claims" are legal claims arising from unpaid special taxes that are levied against specific properties to pay for improvements limited to that property, such as sidewalk repairs. *See id.*

should be recoverable against the small minority of property owners who are tax scofflaws.

Third, these amendments streamline the process of enforcing claims for taxes under the Act. These changes add the important benefit of reducing the costs and expenses associated with these actions.

Legislative Journal–Senate, July 28, 2003, at 859 (statement of Sen. Orie).

Turning to the facts of the case at bar, Appellants Jerry and Theodora Konidaris' ("Delinquent Taxpayers") failed to pay school taxes in 1998, 1999, 2000, and 2001 for their property located in the City of McKeesport, Allegheny County. The total of the delinquent taxes was $2147.59. The tax claim was secured by liens on the property in favor of the McKeesport School District.[4] On three separate dates between August of 2000 and June of 2002, the School District requested that Appellee Portnoff Law Associates, LTD ("the Law Firm") collect the delinquent taxes. During the collection process, the Law Firm added $3779.97 to the total tax claim to account for various fees, including attorney fees. The Delinquent Taxpayers allegedly paid some of the taxes and the attorney fees attendant thereto in 2002, apparently without protesting the legality of the imposition of the attorney fees. Eventually, the Law Firm initiated sheriff sale proceedings on the property with respect to the 1998 and 1999 taxes.

A sheriff's sale scheduled for April 7, 2003, however, was stayed after Delinquent Taxpayers filed their complaint in the case *sub judice* on March 28, 2003, a week after this Court's decision in *Pentlong* rejecting the imposition of attorney fees incident to tax claims. The complaint sought to recover attorney fees paid to the Law Firm in connection with the collection of delinquent taxes, and declaratory relief to enjoin the Law Firm from adding fees incurred in the collection of any other tax lien against anyone that had been assigned to

4. The record before this Court does not include documents relating to the delinquent taxes, resultant liens, and the underlying proceedings. The record before this Court addresses only the action brought by the delinquent taxpayers against the law firm employed to collect the taxes.

the Law Firm.[5] The trial court stayed the then-pending sheriff's sale of the Delinquent Taxpayers' property and enjoined the Law Firm from proceeding to sheriff's sale on any other properties where attorney fees had been added to the lien.

In light of the passage of Act 20 on August 14, 2003, which would retroactively validate all the fees challenged by the Delinquent Taxpayers, the Law Firm petitioned the trial court to dissolve the prior stay of the sheriff's sale, which in turn would facilitate the recovery of the challenged attorney fees. After briefing and hearings, on December 15, 2003, the court granted the order to dissolve the stay in light of Act 20. On December 31, 2003, however, the court granted the Delinquent Taxpayers' request to stay the sheriff's sale based on the Delinquent Taxpayers' assertions that they were filing an interlocutory appeal with the Commonwealth Court, claiming that the ruling involved a controlling question of law.[6] On April 2, 2004, the trial court issued yet another order staying the sale of the Delinquent Taxpayers' property, and enjoining the Law Firm from proceeding to sale on any other properties.

In August 2004, presumably to move this case to a final resolution, the trial court urged both parties to file cross-motions for summary judgment regarding the constitutionality of Act 20. The court and the parties apparently realized that if Act 20 retrospectively validated the previously imposed attorney fees, then the Delinquent Taxpayers would no longer

5. The complaint was filed and is currently captioned as a class action on behalf of all owners of real property "whose real property has been the subject of claims for delinquent municipal property taxes or delinquent school property taxes which delinquent tax claims were placed with [the Law Firm] for collection." Complaint, ¶ 26. As the class was never certified, we will address the case purely in regard to Delinquent Taxpayers' personal claims. Pa.R.C.P. 1715(a) ("Except by special order of the court, no judgment by default or on the pleadings or by summary judgment may be entered in favor of or against the class until the court has certified or refused to certify the action as a class action."). The trial court may have to address the status of the class action upon remand.

6. The record is not clear whether an appeal was filed or whether the Commonwealth Court denied review of the interlocutory order. Regardless, the case remained before the trial court.

be able to challenge the legal premise for the imposition of attorney fees.[7] The Delinquent Taxpayers filed a motion for summary judgment claiming that the retroactivity provision of Act 20 violated the Remedies Clause of Article 1, § 11 of the Pennsylvania Constitution because the statute impinged their vested right not to pay attorney fees incurred in the collection of delinquent taxes. The Law Firm filed a cross-motion for partial summary judgment, asserting that the retroactivity provision was constitutional.

On September 21, 2004, the trial court denied the Delinquent Taxpayers' motion for summary judgment and granted the Law Firm's cross-motion for partial summary judgment. Relying upon our decision in *Ieropoli*, as discussed *infra*, the trial court acknowledged that the Remedies Clause prohibits the enactment of retroactive legislation if the application of the legislation would extinguish a vested right, and noted that an accrued cause of action is a vested right. The trial court opined that the decision in *Pentlong* did not create a cause of action, but instead merely interpreted the statute as not authorizing the collection of reasonable attorney fees in conjunction with the collection of delinquent taxes. From that observation, the trial court concluded that absent a cause of action, no vested right existed to be unconstitutionally impaired by Act 20. The court concluded, "Plaintiffs are, in reality, seeking to protect personal expectations that they would never have to pay attorneys' fees when their tax delinquencies and real estate liens are resolved. This is not the type of vested right that the Pennsylvania Constitution and the United States Constitution protect in the Due Process Clause." Trial Court Opinion at 4.[8] The trial court then

7. While the retroactivity, if proper, would resolve any questions of the legality of the imposition of fees generally, it would not address whether the fees imposed were reasonable, a question we leave to the trial court upon remand.

8. The trial court then engaged in a due process analysis based on federal precedent, and found no due process violation upon the retroactive application of Act 20. The Commonwealth Court, however, limited its holding to the Remedies Clause issue:

We resolve the current appeal by application of the Remedies Clause. Therefore, we need not discuss at length additional arguments relat-

determined that its decision involved a "controlling question of law as to which there is substantial ground for difference of opinion" justifying an immediate appeal pursuant to Pa.R.A.P. 1311(b). Tr. Ct. Order of Oct. 12, 2004.

The Delinquent Taxpayers appealed to the Commonwealth Court. The Commonwealth Court majority properly began its analysis by reviewing *Ieropoli v. AC & S Corp.*, 577 Pa. 138, 842 A.2d 919, this Court's most recent decision applying the Remedies Clause of the Pennsylvania Constitution. The Commonwealth Court, however, failed to realize that, unlike the claim in *Ieropoli*, the Delinquent Taxpayer's claim did not fit cleanly into the traditional model of a Remedies Clause issue. In *Ieropoli*, we were faced with a plaintiff claiming that his remedy for an injury suffered had been extinguished by legislative action in violation of the Remedies Clause, specifically, that the General Assembly enacted legislation capping the asbestos-related liability of a successor corporation that resulted from a merger or consolidation with the originally-liable corporation. After thoroughly analyzing the history of the Remedies Clause in Pennsylvania, we agreed with the plaintiff in *Ieropoli* that the legislation violated the Remedies Clause because it extinguished the plaintiff's accrued cause of action to recover for his asbestos-related illness. As properly noted by the Commonwealth Court, we "held that under the Remedies Clause, a cause of action that has accrued is a vested right which cannot be eliminated by subsequent legislation." *Konidaris v. Portnoff Law Assoc., Ltd.*, 884 A.2d 348, 353 (Pa.Cmwlth.2005). In applying *Ieropoli* and the Remedies Clause to the case at bar, however, the Commonwealth Court focused exclusively on the sufficiency of the counts in the

ing to a due process analysis of the 2003 Amendment, beyond acknowledging an obvious and rational basis for the General Assembly's attempt to cure a deficiency in the 1996 Amendment.
*Konidaris v. Portnoff Law Associates, Ltd.*, 884 A.2d 348, 356 (Pa. Cmwlth.2005). We will not address this reasoning in detail because the Delinquent Taxpayers failed to raise a due process claim in their Petition for Allowance of Appeal to this Court, which was limited to their challenge under the Remedies Clause. *Purple Orchid, Inc. v. Pennsylvania State Police*, 572 Pa. 171, 813 A.2d 801, 804 (2002)("issues not raised in petition for allowance of appeal are waived").

complaint rather than looking to the underlying claims of injury suffered and remedy extinguished: "Following the Supreme Court's process in *Ieropoli*, we examine the claims made by the Delinquent Taxpayers here, analyzing what cause of action is raised, whether it has accrued, and if so, how it was affected by [Act 20]." *Id.*

In so doing, the Commonwealth Court concluded that the Delinquent Taxpayers' declaratory judgment count failed due to jurisdictional defects and that the fraud count failed for failure to demonstrate the necessary element of reliance. The court also concluded that the Delinquent Taxpayers' unjust enrichment claims failed to the extent the claims related to attorney fees that had not been paid prior to the enactment of Act 20, concluding that without actually paying such fees the cause of action was not complete. Absent an accrued cause of action for unjust enrichment on those claims, the court concluded that Act 20 could be applied retroactively without violating the Remedies Clause. Conversely, the court found that the enrichment element was satisfied as to those claims based on attorney fees actually paid prior to the enactment of Act 20, and concluded that for those limited claims, Act 20 unconstitutionally extinguished an accrued cause of action: "[A]pplication of [Act 20] to this [unjust enrichment] claim will remove any argument that the enrichment was unjust, effectively extinguishing this cause of action." *Id.* at 355.

Judge Pellegrini authored a dissent joined by then-President Judge Colins and Judge Friedman. Although we arrive at a different result than the dissent, we agree with its approach to a Remedies Clause issue, which focused not on whether substantive and procedural elements of a count in a complaint have been satisfied, but instead looked to the underlying right which the plaintiffs claim to have been extinguished by the legislative action. Accordingly, the dissent viewed the critical moment to be the time the liens were filed because it considered that the point when rights vested:

> The majority's count-by-count approach at defining the [Delinquent Taxpayers'] lawsuit ignores the notion that the "cause of action" was the wrongful attempt to collect unau-

thorized attorneys' fees for delinquent taxes, not the counts of the complaint which were merely the vehicle by which to enforce legal rights and to pursue legal remedies. For purposes of Article 1, Section 11, however, it is enough to say that the moment a cognizable legal injury is befallen a potential plaintiff, whatever that injury may be, a cause of action has "accrued" and cannot be subsequently eliminated or altered by retroactive act of the legislature. As illustrated above, the cause of action in this case was the right to recover fees and prevent the future attempt to collect fees on underlying tax claims that no one had the authority to impose in the first place as of the day the liens arose, whether or not those fees were "actually received" by Portnoff.

*Id.* at 363 (Pellegrini, J., dissenting). Accordingly, the dissent concluded that the application of Act 20 to validate the imposition of attorney fees on liens filed prior to Act 20 violated the Remedies Clause.

Following the decision of the Commonwealth Court, both the Delinquent Taxpayers and the Law Firm filed petitions for allowance of appeal, which this Court granted. The Delinquent Taxpayers assert that the Commonwealth Court erred in finding constitutional the application of Act 20 to attorney fees paid after the enactment of Act 20.[9] The Law Firm, in contrast, appeals challenging the Commonwealth Court's holding that Act 20 is unconstitutional as applied to the retention of attorney fees that had been paid prior to the enactment of Act 20.

The Delinquent Taxpayers agree with the Commonwealth Court that the appropriate test is that set forth in *Ieropoli*, decreeing that retroactive legislation constitutes an unconstitutional violation of the Remedies Clause if it extinguishes vested rights. Their primary point of contention with the

9. The Delinquent Taxpayers also challenge the Commonwealth Court's dismissal of their declaratory judgment action for failure to join or put on notice the McKeesport School District. *Konidaris,* 884 A.2d at 354–55. As we conclude that the Delinquent Taxpayers' arguments fail under the Remedies Clause, we will not address those jurisdictional issues.

Commonwealth Court majority is the scope of vested rights protected by the Remedies Clause. Delinquent Taxpayers assert that a cause of action is merely a type of vested right, and observe that numerous Pennsylvania cases have found defenses and statutes of limitations to be vested rights. *See Lewis v. Pennsylvania R. Co.,* 220 Pa. 317, 69 A. 821, 823 (1908) ("There is a vested right in an accrued cause of action, in a defense to a cause of action, even in the statute of limitations when the bar has attached, by which an action for a debt is barred."); *see also Ieropoli,* 842 A.2d at 926.

Delinquent Taxpayers claim that their vested right is in the nature of a defense: the "vested right to be free of attorney fees-whether they are collected pre-Act 20 or post-Act 20—as long as they are based on a pre-Act 20 tax lien." Brief for Appellant at 7. Like the dissent below, the Delinquent Taxpayers thus contend that the law in effect at the time a tax lien is filed determines what rights and defenses are associated with that lien, citing *Stroback v. Camaioni,* 449 Pa.Super. 395, 674 A.2d 257 (1996)(holding that plaintiff's rights vested on the date of the relevant motor vehicle accident and that the law in effect on that date controlled). They claim that the law in effect when the liens were filed was the version of § 3 of the MCTLA, which, as interpreted in *Pentlong,* did not provide for reasonable attorney fees for the collection of tax liens. Additionally, observing that under common law attorney fees cannot not be imposed absent express statutory authority, the Delinquent Taxpayers claim that the attorney fees could not be levied in this case absent clear language in the MCTLA, citing *Township of Springfield v. Thomas,* 165 Pa.Cmwlth. 331, 645 A.2d 359 (1994). Delinquent Taxpayers acknowledge the General Assembly's ability to alter common law, but argue that under the Remedies Clause the authority does not allow it to effect an alteration retrospectively if vested rights are harmed. Accordingly, they assert that Act 20 as applied to them violated the Remedies Clause because it extinguished their "vested right to be free of attorney fees and the accrued cause of action for unjust enrichment held by those who paid pre-Act 20 and the accrued cause of action for declaratory

relief held by all Class Members." Reply Brief of Delinquent Taxpayers at 2 (emphasis removed).

In contrast, the Law Firm contends that Delinquent Taxpayers did not have a vested right to be free of attorney fees incurred in the collection of their delinquent taxes. The Law Firm rejects as amorphous any claim of vested rights not associated specifically with a cause of action, and discredits the Delinquent Taxpayers' claims that they had a vested right based in common law not to pay attorney fees:

> If this argument is given any credence, then the Legislature could never change the law from what was allowed under the common law, because all persons would have vested rights to be governed by common law even if they had never been harmed in violation of the common law. In particular, every single statute that has ever been enacted by the Legislature to shift attorneys' fees would then be unconstitutional as depriving someone of a vested right to be forever free from paying attorneys' fees as a consequence of some wrong action.

Brief for Portnoff at 18.[10]

Additionally, the Law Firm contests the conclusion that *Pentlong* granted delinquent taxpayers a right not to pay attorney fees, where it was merely a judicial interpretation of a statute, which cannot give rise to a vested right. Instead, the Law Firm asserts that Act 20 was a remedial statute addressing the failings of the 1996 amendments revealed in *Pentlong.* Moreover, the Law Firm notes that even if the MCTLA did not provide for the collection of attorney fees, the municipalities adopted ordinances and resolutions in the wake of the 1996 amendments specifically permitting the collection

10. *Amicus Curiae* in support of the Law Firm, GLS Capital, suggests that a vested rights analysis does not apply in tax cases: "Careful distillation of the applicable case law reveals that certain types of cases (those involving tax and economic-related curative legislation) rarely have vested rights attached to the 'interests' involved, whereas others (those involving contractual rights or tort injury legislation) often do." Brief for GLS at 11. Rather than a vested right, GLS argues that Delinquent Taxpayers had an economic advantage not protected by the Remedies Clause.

of attorney fees at the time when the liens were filed and when the fees were paid. The Law Firm contends that these ordinances and resolutions constitute independent authority to collect the fees. The Law Firm looks not to the MCTLA for the authority to enact these resolutions and ordinances but to the Local Tax Enabling Act, 53 P.S. § 6902 (providing that certain entities such as school districts "may, in their discretion, by ordinance or resolution, for general revenue purposes, levy, assess and collect or provide for the levying, assessment and collection of such taxes as they shall determine on ... and upon the transfer of real property, or of any interest in real property, situate within the political subdivision"). Accordingly, the Law Firm argues that the Delinquent Taxpayers did not have a vested right not to pay taxes, and thus that the application of Act 20 would not violate the Remedies Clause.[11]

At the heart of this case is whether the retroactive amendment of § 3 of the MCTLA violates the Remedies Clause of the Pennsylvania Constitution. In interpreting our state constitution, "the fundamental rule of construction which guides us is that the Constitution's language controls and must be interpreted in its popular sense, as understood by the people when they voted on its adoption." *Ieropoli*, 842 A.2d at 925. Additionally, any party challenging the constitutionality of a statute must meet a heavy burden, for we presume legislation to be constitutional absent a demonstration that the statute "clearly, palpably, and plainly" violates the Constitution. *Id.* at 928. As with any challenge to the constitutionality of a statutory amendment, our scope of review is plenary and our standard of review is *de novo*.

11. Alternatively, assuming *arguendo* that the collection of attorney fees was prohibited on liens filed prior to Act 20, the Law Firm agrees with the Commonwealth Court that delinquent taxpayers who have not paid any fees cannot claim unjust enrichment because there has been no enrichment of the Law Firm, just or unjust, absent payment. Moreover, the Law Firm asserts that any claims regarding attorney fees paid prior to Act 20 were waived for failure to raise the issue in the underlying tax collection actions, especially where the MCTLA provides a process to contest the tax liens, *see* 53 P.S. § 7182 (providing that a taxpayer may, at any stage of the proceedings, present his petition, under oath or affirmation, setting forth that he has a defense in whole or in part thereto, and of what it consists).

Article I, Section 11 of the Pennsylvania Constitution, *in toto*, provides:

All courts shall be open; and *every man for an injury done him in his lands, goods, person or reputation shall have remedy by due course of law,* and right and justice administered without sale, denial or delay. Suits may be brought against the Commonwealth in such manner, in such courts and in such cases as the Legislature may by law direct.

PA. CONST. Art. 1, § 11 (emphasis added). The so-called "Remedies Clause" is the emphasized language. Although this provision is not present in the federal constitution, similar language is included in at least thirty-nine state constitutions, and has played a significant role in the development of Anglo–American law since the Magna Carta. *See Ieropoli,* 842 A.2d at 925–28; Donald Marritz, *Courts to be Open; Suits Against the Commonwealth: Article I, Section 11 in* The PENNSYLVANIA CONSTITUTION: A TREATISE ON RIGHTS AND LIBERTIES, 14.1–14.5 (Ken Gormley, et al. eds., 2004)(hereinafter "GORMLEY TREATISE"). Closer to home, the Remedies Clause is included in the Declaration of Rights of the Pennsylvania Constitution as one of the "general, great and essential principles of liberty and free government." PA. CONST. Art. 1, Preamble. While the clause is ubiquitous, its meaning is subject to dispute as evidenced by different interpretations across the history of this Commonwealth and in our sister states. GORMLEY TREATISE, at § 14.4.

The language of the clause originates in the Magna Carta and was brought to this state and this country by William Penn. *Id.* at 143, 842 A.2d 919(a). However, the Remedies Clause was not included in Pennsylvania's Constitution until 1790. *Id.* at 143, 842 A.2d 919(c). The significance of the date inheres in the different lights in which the colonists viewed the legislature: "In the Constitution of 1776, the legislative branch was seen as the peoples' servant and salvation and the executive branch was distrusted. Things turned full circle in the ensuing decades. People became disillusioned with legislative supremacy because of improprieties and abuses." *Id.* at 143, 842 A.2d 919(c) (internal quotation marks omitted). The

changes made in 1790, including the inclusion of the Remedies Clause, placed controls on the power of the legislature and augmented the power of the judiciary as a check on the legislature.

In the early case of *Menges v. Dentler*, 33 Pa. 495, 1895 WL 8742 (1859), we asserted that the Remedies Clause imposed "imperative limitations on legislative authority, and imperative impositions of judicial duty. To the judiciary they say:—You shall administer justice to all men by due course of law, and without sale, denial, or delay; and to the legislature they say:—You shall not intermeddle with such functions." *Id.* 1895 WL 8742 at *4.

Although similar to the oft-used term "due process," the term "due course of law" has a distinct meaning in the Remedies Clause: "The right to due process protects people against official deprivations of liberty or property by the state, except by 'law of the land.' By contrast, the right to 'due course of law' provides an independent guarantee of legal remedies for private wrongs by one person against another, through the state's judicial system." GORMLEY TREATISE, at § 14.4(c)(internal citations omitted). For example, in the 1860's due course of law was invoked to override legislative attempts to reverse previously decided court decisions addressing the rights of individual parties. *See Baggs' Appeal*, 43 Pa. 512, 1862 WL 5187, at *3 (1862) ("A man's rights are not decided by due course of law, if the judgment of the courts upon them may be set aside or opened for further litigation by an Act of Assembly."); *Menges v. Dentler*, 33 Pa. 495, 1859 WL 8742 (1859)(declaring unconstitutional an Act of Assembly validating a sheriff's deed which had been invalidated by the Court). Similarly, the Court rejected legislative attempts to dictate judicial interpretations of prior statutes. *See Reiser v. The William Tell Saving Fund Assoc.*, 39 Pa. 137, 1861 WL 5966 (1861)(holding that the legislature could not impose retroactively a statutory interpretation where the courts had interpreted the language differently, in a case involving a contract dispute between private parties).

Before considering the retroactive effect of the law at issue, we observe that the Remedies Clause has been invoked frequently when the legislature attempts to alter or eliminate in full either a statutory or common law cause of action for an injury. Scholars have observed two divergent lines of cases: one viewing the constitutional protection of remedies for injuries as a "fundamental right," *Kelly v. Brenner*, 317 Pa. 55, 175 A. 845, 847 (1934), and a more recent line of cases restricting the impact of the Remedies Clause, *see Freezer Storage, Inc. v. Armstrong Cork Co.*, 476 Pa. 270, 382 A.2d 715 (1978). *See* GORMLEY TREATISE, at 14.4(f). Similarly, while we originally required the legislature to provide a substitute remedy anytime it eliminated a remedy, we later moved away from the *quid pro quo* approach.[12] While some states have refused to allow the elimination of common law remedies present at the time of their constitution's enactment, we have held that the definition of a legal injury protected by the Remedies Clause may change because there is no "immutable body of negligence law." *Id.* (quoting, *Freezer Storage*, 382 A.2d at 720). In so doing, we have curtailed the reach of the Remedies Clause and expanded legislative power to a greater extent than many other states. See GORMLEY TREATISE, at 14.4(f).

While our case law has developed to allow the alteration of common law remedies, in *Ieropoli* and other cases cited therein, we have held that the alteration cannot apply retroactively to accrued causes of action. Our Court in *Menges*, in an oft-cited passage, set forth the rationale against retroactive application of law in some instances:

> The law which gives character to a case, and by which it is to be decided (excluding the forms of coming to a decision), is the law that is inherent in the case, and constitutes part of it when it arises as a complete transaction between the

**12.** The decision in *Freezer Storage* essentially reversed a prior holding in *Dolan v. Linton's Lunch*, 397 Pa. 114, 152 A.2d 887, 892 (1959) in which this Court had held that the legislature could not "enact a law that vitiates an existing common-law remedy" but could enact a substitute remedy. In *Freezer Storage*, the Court deemed the language in *Dolan* to be *dicta*. *Freezer Storage*, 382 A.2d at 721.

parties. If this law be changed or annulled, the case is changed, and justice denied, and the due course of law violated.

*Menges,* 33 Pa. 495, 1859 WL 8742, at *4.

In *Kay v. The Pennsylvania Railroad Co.,* 65 Pa. 269, 1870 WL 8539 (Pa.1870), we refused to apply a statutory limit on tort recovery retroactively to a case that had accrued prior to the passage of the act:

> [W]e are bound therefore to say that this law is retrospective in its operation on this case, deprives the plaintiff of a vested right, and is inoperative. By the 11th section of the 9th article [13] of the Constitution every man for an injury done him in his lands, goods, person or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial or delay. This article is declared to be excepted out of the general powers of government, and shall for ever remain inviolate. When this injury happened in 1864, a right to recover full compensation to the extent of the damage suffered vested in the plaintiff. She commenced suit in 1866. Evidently the legislature could not, by a retrospective act in 1868, declare that an injury to the extent of $8000 should be compensated with the sum of $3000. This is a flat denial of a right and a refusal to administer justice. The law of the case at the time when it became complete is an inherent element in it, and if changed or annulled the right is annulled, justice is denied, and the due course of law violated.

*Id.* at *7; *see also, Jenkins v. Hospital of Medical College of Pennsylvania,* 535 Pa. 252, 634 A.2d 1099 (1993)(holding that statutory elimination of tort of wrongful birth could not be applied retroactively).

Similarly, we have refused to apply retroactive legislation that reduces a defendant's defenses or "exemptions from demands" based on the concept of a vested right:

**13.** The language of the Remedies Clause was previously included in Article 9, Section 11.

> A legal exemption from liability on a particular demand, constituting a complete defense to an action brought, stands on quite as high ground as a right of action. If the law of the case at the time when it became complete is such an inherent element in it that a plaintiff may claim it as a vested right, on what possible ground can it be held that a defendant has no vested right with respect to an exemption or defense?

*Lewis v. Pennsylvania R. Co.*, 220 Pa. 317, 69 A. 821, 823 (1908). However, we limited the scope of the protection to vested rights: "It must be something more than a mere expectation, based upon an anticipated continuance of existing law. It must have become a title, legal or equitable, to the present or future enforcement of a demand, or a legal exemption from a demand made by another." *Id.* (internal quotations omitted). We have cited *Lewis* with approval in several more recent cases: *See Ieropoli*, 577 Pa. 138, 842 A.2d 919, 926; *Gibson v. Commonwealth*, 490 Pa. 156, 415 A.2d 80, 83 (1980)(collecting cases noting that the Court has "consistently held that the Legislature's repeal of a law which created a right of action does not disturb any actions accrued thereunder").

While courts in this Commonwealth and across the country vacillate along the spectrum from holding sacrosanct any injury that was protected under common law at the time a state adopted its constitution, to allowing for revision only where the legislature supplies a *quid pro quo* remedy, to allowing the legislature free reign to redefine what is a "legal injury," all agree that the legislative branch cannot dissolve a right to recover once a case accrues. *See* David Schuman, *The Right to a Remedy*, 65 Temp. L.Rev. 1197, 1206 (1992). "If, at that moment in a particular case, the law would provide the plaintiff access to a remedy, no subsequent law can take it away." *Id.* at 1208. Moreover, the date the law is frozen for a case is the date the injury occurs, and thus the date the cause of action and the relevant defenses accrue.

The Delinquent Taxpayers in the case at bar present a tempting argument that they have a right not to pay attorney

fees incurred in the collection of taxes and that their right in the nature of a defense vested as of the date the liens were filed, analogizing it to the date of an injury in a tort case. The flaw in their argument, however, is that while they fit their case into the terms used in our jurisprudence relating to the Remedies Clause, they fail to apply the language of the Remedies Clause itself, as required when analyzing provisions of the Constitution. By focusing on the term "vested right," the Delinquent Taxpayers lose sight of the purpose of the Remedies Clause: the protection from legislative action of an individual's remedy for an injury done. In this case, there is no "injury done."

Rather than asserting a claim for a remedy for an injury, the Delinquent Taxpayers frame their claim as a right not to do something. Indeed, the Delinquent Taxpayers attempt to direct our focus away from their cause of action for unjust enrichment, a tort claim, which the Commonwealth Court found flawed. By invoking *Lewis*, they attempt to come within our Court's extension of the Remedies Clause to defenses. They fail to demonstrate, however, how their right not to do something is the same as an affirmative defense against an accrued cause of action, which is premised on an injury done to a person. The Delinquent Taxpayers do not direct us to any case applying the Remedies Clause to a governmental body's lien on a taxpayer's land. Instead, our Remedies Clause jurisprudence has almost exclusively dealt with tort law causes of action between individuals. *See Menges v. Dentler*, 33 Pa. 495, 1859 WL 8742 at *3 (noting that the constitutional provisions "declare that all claims for justice between man and man, shall be tried, decided, and enforced exclusively [sic] the judicial authority of the state, and by due course of law.").

The language of the Remedies Clause protects "every man['s]" ability to recover for, *inter alia*, tort or contract injuries, and in no way suggests the protection of a governmental body from the misdeeds of its citizens. The Delinquent Taxpayers fail to provide any citations to cases outside of tort or contract law that would justify encompassing this

case within the Remedies Clause. Instead, we are concerned regarding the potential implication of bringing their asserted right not to pay fees under the Remedies Clause umbrella. If the fee in this case cannot be retroactively applied, the legislature would be prevented from nearly any retroactive increase in fees.

The Superior Court has noted a distinction between the application of the Remedies Clause in traditional tort and contract cases, and its application in tax cases, which is perhaps more applicable to the case at bar:

> [T]the principle that the legislature cannot give retrospectively a right of action where none existed at the time of the occurrence out of which the alleged cause of action arises has no application to the imposing of charges in the nature of a tax. They are proceedings in rem; no feature of a contract relation exists and the omission of some detail of procedure does not establish in the owner of the property a vested defense available against a validating statute.

*Borough of Huntington v. Dorris*, 78 Pa.Super. 469, 1922 WL 2813, *1 (1922)(distinguishing *Lewis* as based on a contest involving a personal right and approving of a retrospective law validating a municipal lien despite flaws in the enactment of the relevant ordinance). This Court also echoed this holding in *Commonwealth v. Rockwell Mfg. Co.*, 392 Pa. 339, 140 A.2d 854 (1958):

> The taxing power of the Legislature is very broad and includes power to enact taxes which are retroactive in effect as well as the power to retroactively increase taxes. Many Pennsylvania cases have sustained the exercise of this power and the United States Supreme Court has approved retroactive taxes since *Stockdale v. Insurance Companies*, 20 Wall. 323, 22 L.Ed. 348, 87 U.S. 323 (1874).

*Id.* at 856 (internal citation omitted).

Although we acknowledge the superficial resemblance of the asserted vested right not to pay attorney fees to the accrued defenses to causes of actions protected by the Remedies Clause in cases such as *Lewis*, we conclude that it is illusory.

The Delinquent Taxpayers have not demonstrated that the retroactive validation of attorney fees incurred in the collection of taxes is a denial of "a remedy by due course of law" for "an injury done" or even a denial of an accrued defense to a cause of action for such injury. Accordingly, the Delinquent Taxpayers fail to demonstrate that the retroactive amendment of § 3 of the MCTLA "clearly, plainly, and palpably" violates the Pennsylvania Constitution. *Ieropoli*, 842 A.2d at 928. Therefore, we reverse the decision of the Commonwealth Court to the extent it found a Remedies Clause violation, with direction that the case be remanded to the trial court for further proceedings.

Former Chief Justice Cappy and former Justice Baldwin did not participate in the decision of this case.

Chief Justice CASTILLE and Justice SAYLOR join the opinion.

Justice EAKIN files a concurring and dissenting opinion.

Justice EAKIN, concur and dissent.

I would affirm the Commonwealth Court's holding; *see Konidaris v. Portnoff Law Associates, Ltd.*, 884 A.2d 348, 356 (Pa.Cmwlth.2005). As such, I join the affirmation of portions of that decision, but must dissent from the reversal of the remainder.[1]

---

1. Finding Delinquent Taxpayers' Remedies Clause argument failed, the majority does not address the jurisdictional issue. Majority Op., at 1237 n. 9. I would affirm the Commonwealth Court's dismissal of Delinquent Taxpayers' declaratory judgment action for jurisdictional defects. *See Konidaris*, at 355.