# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jeanie Ellwood,                      :
               Petitioner         :
                       :
        v.                    :
                       :
Pocono Medical Center and    :
PMA Management Corp.       :
(Workers' Compensation      :
Appeal Board),            :   No. 796 C.D. 2021
            Respondents    :   Submitted: August 12, 2022


BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
               HONORABLE ANNE E. COVEY, Judge
               HONORABLE LORI A. DUMAS, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                         FILED: November 29, 2022

Jeanie Ellwood (Claimant) petitions this Court for a review of the Workers' Compensation (WC) Appeal Board's (Board) June 25, 2021 order affirming the WC Judge's (WCJ) decision that modified Claimant's WC benefit status from total to partial disability as of April 10, 2019, based on an impairment rating evaluation (IRE). Claimant presents two issues for this Court's review: (1) whether Act 111[1] can be constitutionally applied to workers whose injuries occurred

---

[1] Act of October 24, 2018, P.L. 714, No. 111 (Act 111). Act 111 repealed the unconstitutional IRE provision and replaced it with a new IRE provision, Section 306(a.3) of the WC Act, Act of June 2, 1915, P.L. 736, *as amended*, added by Section 1 of Act 111, 77 P.S. § 511.3, that was virtually identical and effective immediately. Act 111 specifically incorporated and adopted the use of the American Medical Association's "Guides to the Evaluation of Permanent Impairment," 6th edition (second printing April 2009), for performing IREs.

before October 24, 2018, the effective date of Act 111; and (2) whether Act 111 contains sufficiently specific language to make the law retroactive. After review, this Court affirms.

On March 17, 2009, while in the course of her employment with Pocono Medical Center (Employer), Claimant sustained a work-related L5-S1 disc injury with lumbar radiculopathy that required surgery. On April 10, 2019, Claimant underwent an IRE, provided for in Section 306(a.3) of the WC Act (Act),[2] which resulted in a whole person impairment rating of 13%. On April 25, 2019, Employer filed a Modification Petition, seeking to modify Claimant's disability status from total to partial based upon the IRE results. On October 26, 2020, the WCJ granted the Modification Petition, modifying Claimant's disability status from total to partial as of April 10, 2019. Claimant appealed to the Board. On June 25, 2021, the Board affirmed the WCJ's decision. Claimant appealed to this Court.[3]

Initially, Act 111 replaced former Section 306(a.2) of the Act with Section 306(a.3) of the Act, which declares, in pertinent part:

> (1) **When an employe has received total disability compensation** . . . **for a period of [104] weeks**, **unless otherwise agreed to**, **the employe shall be required to submit to a medical examination which shall be requested by the insurer within [60] days upon the expiration of the [104] weeks to determine the degree of impairment due to the compensable injury**, **if any**. The degree of impairment shall be determined based upon an evaluation by a physician . . . pursuant to the [American Medical Association (AMA) 'Guides,'] 6th edition (second printing April 2009).

---

[2] Section 306(a.2) of the Act, *formerly* 77 P.S. § 511.2, added by the Act of June 24, 1996, P.L. 350, was repealed by Act 111, and replaced by Section 306(a.3) of the Act.

[3] "Our review is limited to determining whether the WCJ's findings of fact were supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated." *Pierson v. Workers' Comp. Appeal Bd. (Consol Pa. Coal Co. LLC)*, 252 A.3d 1169, 1172 n.3 (Pa. Cmwlth.), *appeal denied*, 261 A.3d 378 (Pa. 2021).

2

(2) **If such determination results in an impairment rating that meets a threshold impairment rating that is equal to or greater than [35%] impairment under the [AMA 'Guides,'] 6th edition (second printing April 2009), the employe shall be presumed to be totally disabled and shall continue to receive total disability compensation benefits** . . . . **If such determination results in an impairment rating less than [35%] impairment under the [AMA 'Guides,'] 6th edition (second printing April 2009), the employe shall then receive partial disability benefits** . . . : Provided, however, That no reduction shall be made until [60] days' notice of modification is given.

(3) Unless otherwise adjudicated or agreed to based upon a determination of earning power . . . , the amount of compensation shall not be affected as a result of the change in disability status and shall remain the same. An insurer or employe may, at any time prior to or during the [500]-week period of partial disability, show that the employe's earning power has changed.

(4) An employe may appeal the change to partial disability at any time during the [500]-week period of partial disability[:] Provided, That there is a determination that the employe meets the threshold impairment rating that is equal to or greater than [35%] impairment under the [AMA 'Guides,'] 6th edition (second printing April 2009).

(5) Total disability shall continue until it is adjudicated or agreed . . . that total disability has ceased or the employe's condition improves to an impairment rating that is less than [35%] of the degree of impairment defined under the [AMA 'Guides,'] 6th edition (second printing April 2009).

(6) Upon request of the insurer, the employe shall submit to an [IRE] in accordance with the provisions of [S]ection 314 [of the Act] to determine the status of impairment: Provided, however, That for purposes of this clause, the employe shall not be required to submit to more than [2] [IREs] under this clause during a [12]-month period.

(7) In no event shall the total number of weeks of partial disability exceed [500] weeks for any injury or recurrence thereof, regardless of the changes in status in disability that may occur. In no event shall the total number of

3

weeks of total disability exceed [104] weeks for any employe who does not meet a threshold impairment rating that is equal to or greater than [35%] impairment under the [AMA 'Guides,'] 6th edition ([second printing April 2009]), for any injury or recurrence thereof.

77 P.S. § 511.3 (emphasis added).

Section 3 of Act 111 further provides, in relevant part:

(1) For the purposes of determining whether an employee shall submit to a medical examination to determine the degree of impairment and whether an employee has received total disability compensation for the period of 104 weeks under [S]ection 306(a.3)(1) of the [A]ct, **an insurer shall be given credit for weeks of total disability compensation paid prior to the effective date of this paragraph**. This section shall not be construed to alter the requirements of [S]ection 306(a.3) of the [A]ct.

(2) For the purposes of determining the total number of weeks of partial disability compensation payable under [S]ection 306(a.3)(7) of the [A]ct, **an insurer shall be given credit for weeks of partial disability compensation paid prior to the effective date of this paragraph**.

Act 111, § 3(1), (2) (emphasis added).

Claimant first argues that Act 111 cannot be constitutionally applied to Claimant's injury, which occurred prior to its passage, and cannot be relied upon to limit her WC benefits, because the Pennsylvania Supreme Court declared in *Protz v. Workers' Compensation Appeal Board (Derry Area School District)*, 161 A.3d 827 (Pa. 2017) (*Protz II*), that former Section 306(a)(2) of the Act is unconstitutional. However, this Court rejected a similar argument in *Whitfield v. Workers' Compensation Appeal Board (Tenet Health System Hahnemann LLC)*, 188 A.3d 599 (Pa. Cmwlth. 2018),[4] wherein the claimant argued that pursuant to *Protz*

---

[4] *Whitfield* was decided on June 6, 2018. The *Whitfield* Court held that the proper date for modification based on an unconstitutional IRE is the date the reinstatement petition is filed.

*II*, she was entitled to have her total disability status reinstated as of the time of her unconstitutional IRE. The *Whitfield* Court explained:

> Simply because *Protz II* is being applied to a case that arose from a work injury and a change in disability status that predates it does not mean it operates retroactively. *Warren v. Folk*, 886 A.2d 305, 308 (Pa. Super. 2005). It would be retroactive if it related back and gave a prior transaction a legal effect different from that which it had under the law in effect at the time. *Id*. This decision does not alter [the c]laimant's **past** status. Rather, it gives effect to the [c]laimant's status as it existed at the time she filed her reinstatement petition, which was filed within the statutory timeframe for filing such petitions.

*Whitfield*, 188 A.3d at 617. "Act 111 simply provide[s] employers with the means to change a claimant's disability status from total to partial by providing the requisite medical evidence that the claimant has a whole[-]body impairment of less than 35%, after receiving 104 weeks of [temporary total disability] benefits." *Pierson v. Workers' Comp. Appeal Bd. (Consol Pa. Coal Co. LLC)*, 252 A.3d 1169, 1179 (Pa. Cmwlth.), *appeal denied*, 261 A.3d 378 (Pa. 2021).

Claimant adds that Act 111's retroactive application violates article I, section 11 of the Pennsylvania Constitution, known as the Remedies Clause.[5] Specifically, Claimant asserts that applying Act 111 in that manner deprives her of her vested right to ongoing WC benefits.

---

[5] Article I, section 11 of the Pennsylvania Constitution declares:

> All courts shall be open; and every man for an injury done him in his lands, goods, person or reputation shall have remedy by due course of law, and right and justice administered without sale, denial or delay. Suits may be brought against the Commonwealth in such manner, in such courts and in such cases as the Legislature may by law direct.

PA. CONST. art. I, § 11.

However, the Pennsylvania Supreme Court

> limited the scope of the protection to vested rights: 'It must be something more than a mere expectation, based upon an anticipated continuance of existing law. It must have become a title, legal or equitable, to the present or future enforcement of a demand, or a legal exemption from a demand made by another.'

*Konidaris v. Portnoff Law Assocs., Ltd.*, 953 A.2d 1231, 1242 (Pa. 2008) (quoting *Lewis v. Pa. R.R. Co.*, 69 A. 821, 823 (Pa. 1908)); *see also George v. City of Phila. (Workers' Comp. Appeal Bd.)* (Pa. Cmwlth. No. 23 C.D. 2022, filed Oct. 11, 2022); *Jaskulski v. Workers' Comp. Appeal Bd. (Weis Mkts. Inc.)* (Pa. Cmwlth. No. 797 C.D. 2021, filed Apr. 13, 2022); *Stoshick v. Air Prods. & Chems., Inc. (Workers' Comp. Appeal Bd.)* (Pa. Cmwlth. No. 27 C.D. 2021, filed Feb. 3, 2022), *appeal denied*, (Pa. No. 90 MAL 2022, filed Aug. 8, 2022).[6]

Section 413(a) of the Act provides that "[a] [WCJ] . . . may, at any time, modify, reinstate, suspend, or terminate [WC benefits] . . . upon petition filed by either party . . . , upon proof that the disability of an injured employe has increased, decreased, recurred, or has temporarily or finally ceased . . . [;]" thus, there are **no vested rights** in WC benefits. 77 P.S. § 772; *see also Whitfield*. Because this Court has previously ruled that a WC claimant does not have a vested right to ongoing temporary total disability benefits that Act 111 violates, Claimant's argument to the contrary is unfounded.

Claimant next asserts that Act 111 does not contain sufficiently specific language to make the law retroactive. In *Rose Corporation v. Workers'*

---

[6] Unreported decisions of this Court issued after January 15, 2008, may be cited as persuasive authority pursuant to Section 414(a) of this Court's Internal Operating Procedures. 210 Pa. Code § 69.414(a). The unreported decisions cited herein are relied on for their persuasive authority.

*Compensation Appeal Board (Espada)*, 238 A.3d 551 (Pa. Cmwlth. 2020), this Court explained:

> The plain language of Section 3 [of Act 111] establishes a mechanism by which employers/insurers may receive credit for weeks of compensation previously paid. First, Section 3(1) [of Act 111] provides that an employer/insurer 'shall be given credit for weeks of total disability compensation paid prior to the effective date of this paragraph' for purposes of determining whether the 104 weeks of total disability had been paid. This 104 weeks is important because, under both the former and current IRE provisions, a claimant need not attend an IRE until after the claimant receives 104 weeks of total compensation . . . . Therefore, pursuant to Section 3(1) [of Act 111], an employer/insurer will receive credit towards this 104 weeks for any weeks of total disability benefits that were previously paid prior to Act 111's enactment. Second, an employer/insurer will be given credit for any weeks of partial disability compensation paid prior to enactment of Act 111 "for the purposes of determining the total number of weeks of partial disability compensation payable under Section 306(a.3)(7) of the Act." In short, any week of partial disability previously paid will count towards the 500-week cap on such benefits.
>
> Accordingly, Section 3 of Act 111 does not evidence clear legislative intent that the entirety of Act 111 should be given retroactive effect. Instead, it appears the General Assembly intended that employers and insurers that relied upon former Section 306(a.2) [of the Act] to their detriment by not pursuing other methods of a modification should not bear the entire burden of the provision being declared unconstitutional. Through the use of very careful and specific language, the General Assembly provided employers/insurers with credit for the weeks of compensation, whether total or partial in nature, previously paid. However, for the benefit of claimants, the General Assembly also specifically reduced the impairment rating necessary for a claimant's status to be changed from 49% or lower to 34% or lower, making it more difficult for employers to change total disability status to partial disability status. That the General Assembly used specific language to give retroactive effect

7

to these carefully selected individual provisions does not make the entirety of Act 111 retroactive as the amendment lacks clear language to that effect.

*Rose Corp.*, 238 A.3d at 561-62 (citations and footnote omitted).

> While it is true that Section 306(a.3) [of the Act] essentially reenacted the IRE provisions, importantly, Section 306(a.3) [of the Act] **did not take effect** until it was enacted on October 24, 2018. Therefore, until that time, [an e]mployer could not utilize an IRE to change [a c]laimant's disability status, even if the IRE otherwise complied with the later enacted requirements of Section 306(a.3)(1) [of the Act,] because no law permitted [an e]mployer to utilize an IRE process until Act 111 was enacted. There is no provision in Act 111 which specifically or implicitly provides for an IRE performed **prior** to Section 306(a.3) [of the Act]'s enactment to be validated afterward. Arguably, this would undermine the invalidation of IREs by the [Pennsylvania] Supreme Court in *Protz II*, whereas the approach set forth herein gives effect to the statutory language while upholding the legislative balance of claimants' and employers'/insurers' interests in light of *Protz II* and Act 111.

*Rose Corp.*, 238 A.3d at 563-64 (footnote omitted).

"[A]s [this Court] made clear in *Rose Corporation*, the 104-week and credit provisions of Act 111 were explicitly given retroactive effect by the clear language used by the General Assembly." *Pierson*, 252 A.3d at 1180; *see also Hender-Moody v. Am. Heritage Fed. Credit Union (Workers' Comp. Appeal Bd.)* (Pa. Cmwlth. No. 166 C.D. 2021, filed Feb. 15, 2022), slip op. at 7 ("Act 111's IRE mechanisms can only apply after an employee has received 104 weeks of total disability benefits, which clearly contemplates application to injuries predating Act 111. 77 P.S. § 511.3(1)." "Because our analysis in *Pierson* is directly applicable and controlling here, we reject [the c]laimant's constitutional challenges to Act 111."); *George*, slip op. at 15 ("Based on this Court's previous rulings that Act 111 is constitutional and applicable to injuries occurring prior to October 24, 2018, the

Board properly upheld the WCJ's decision granting the [m]odification [p]etition effective as of the . . . IRE date."). Accordingly, Claimant's argument that Act 111 does not contain sufficiently specific language to make the law retroactive lacks merit.

For all of the above reasons, the Board's order is affirmed.


_____
ANNE E. COVEY, Judge

9

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jeanie Ellwood,                        :
                 Petitioner        :
                                 :
       v.                     :
                                 :
Pocono Medical Center and              :
PMA Management Corp.                    :
(Workers' Compensation                 :
Appeal Board),                         :   No. 796 C.D. 2021
                 Respondents     :

## O R D E R

AND NOW, this 29th day of November, 2022, the Workers' Compensation Appeal Board's June 25, 2021 order is affirmed.

_____

ANNE E. COVEY, Judge