**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**


**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**


| | | |
|---|---|---|
| CHRISTOPHER G. YANAKOS, SUSAN KAY YANAKOS AND WILLIAM RONALD YANAKOS, HER HUSBAND, | : | No. 10 WAP 2018 |
| | : | |
| | : | Appeal from the Order of the Superior |
| Appellants | : | Court entered July 26, 2017 at No. |
| | : | 1331 WDA 2016, affirming the Order |
| | : | of the Court of Common Pleas of |
| | : | Allegheny County entered August 29, |
| v. | : | 2016 at No. GD-15-022333. |
| | : | |
| | : | ARGUED: October 24, 2018 |
| UPMC, UNIVERSITY OF PITTSBURGH | : | |
| PHYSICIANS, AMADEO MARCOS, M.D. | : | |
| AND THOMAS SHAW-STIFFEL, M.D., | : | |
| | : | |
| Appellees | : | |


**OPINION**


**JUSTICE MUNDY**                                    **DECIDED: OCTOBER 31, 2019**

*Justice Mundy files the Opinion of the Court with respect to Part I and Part III to the extent supported by Justice Donohue as indicated in her concurring and dissenting opinion. Justice Mundy also files an opinion with respect to Part II, joined by Justices Todd and Dougherty, and announces the Judgment of the Court.*

In this appeal by allowance, we consider whether the seven-year statute of repose in Section 1303.513(a) of the Medical Care Availability and Reduction of Error Act (MCARE Act)[1] comports with Article I, Section 11 of the Pennsylvania Constitution, which guarantees "[a]ll courts shall be open; and every man for an injury done him in his lands,

_____

[1] 40 P.S. §§ 1303.101-1303.910.

goods, person or reputation shall have remedy by due course of law[.]" PA. CONST. art. I, § 11. Because we conclude the seven-year statute of repose is not substantially related to an important government interest, we reverse the Superior Court's order affirming the trial court's grant of judgment on the pleadings and remand for further proceedings.

I.

Susan Yanakos suffers from a genetic condition called Alpha-1 Antitrypsin Deficiency (AATD). Patients with AATD do not produce enough Alpha-1 Antitrypsin, a protein synthesized in the liver that plays an important role in protecting the lungs from damage. R.R. at 4a-5a. In the summer of 2003, one of Susan's physicians, Dr. Amadeo Marcos, advised her that she needed a liver transplant due to the progression of her AATD. Because Susan was not a candidate for a cadaver liver, her son Christopher volunteered to donate a lobe of his liver to his mother.

Christopher underwent an extensive medical evaluation to determine whether he was a suitable liver donor. As part of that process, and at Dr. Marcos's request, Dr. Thomas Shaw-Stiffel evaluated Christopher. Christopher advised Dr. Shaw-Stiffel that several of his family members suffered from AATD, but that he was unsure whether he did as well. Dr. Shaw-Stiffel ordered additional laboratory tests for Christopher, but never informed him of the results, which allegedly showed that Christopher had AATD and was not a candidate for liver donation.[2] One month after Christopher's consultation with Dr. Shaw-Stiffel, in September 2003, Dr. Marcos went forward with the operation, removing a portion of Christopher's liver and transplanting it into Susan.

---

[2] Our summary of these facts is based upon the allegations in the Yanakoses' complaint. While Appellees contest many of these allegations, the disputed facts were not submitted to a fact-finder because the trial court granted Appellees' motion for judgment on the pleadings. *See Cagey v. Commonwealth*, 179 A.3d 458, 463 (Pa. 2018) (explaining our standard of review over a decision sustaining a judgment on the pleadings requires us to determine whether, on the facts asserted in the plaintiff's complaint, the law makes recovery impossible).

More than twelve years later, in December 2015, Christopher, Susan, and Susan's husband, William Yanakos (collectively "the Yanakoses") sued UPMC, University of Pittsburgh Physicians, Dr. Marcos, and Dr. Shaw-Stiffel (collectively "Appellees"). In their complaint, the Yanakoses raised claims for battery/lack of informed consent, medical malpractice, and loss of consortium. The Yanakoses alleged that they did not discover Appellees' negligence until eleven years after the transplant surgery, when additional testing revealed that Susan still had AATD, which the transplant should have eliminated.

In their answer to the Yanakoses' complaint, Appellees raised the affirmative defense that the seven-year statute of repose[3] in the MCARE Act barred the Yanakoses' claims. *See* 40 P.S. § 1303.513(a) (providing that "no cause of action asserting a medical professional liability claim may be commenced after seven years from the date of the alleged tort or breach of contract"). Appellees also filed a motion for judgment on the pleadings based on the MCARE Act's repose period.

The trial court concluded that it was bound by the plain language of the MCARE Act's seven-year statute of repose. The court explained that, while the MCARE Act contains two exceptions to the seven-year repose period, the Yanakoses' claims did not fall within either of those exceptions. Trial Ct. Op. at 5-6; *see* 40 P.S. § 1303.513(b) (exception for injuries caused by foreign objects left in a patient's body); 40 P.S. § 1303.513(c) (exception for malpractice claims commenced by or on behalf of a minor). Accordingly, the trial court granted Appellees' motion for judgment on the pleadings.

---

[3] Statutes of repose place a temporal boundary on the right to bring a civil action. Unlike statutes of limitations, which begin to run only after a cause of action has accrued, a statute of repose's time limit is measured from the date of the defendant's last culpable act or omission, regardless of when the injury occurred or was discovered. This means that a statute of repose, unlike a statute of limitations, may bar a plaintiff's suit before his or her cause of action even arises. *Vargo v. Koppers Co., Eng'g & Constr. Div.*, 715 A.2d 423, 425 (Pa. 1998). Statutes of repose constitute a legislative judgment that a particular class of defendants should be free from liability after a fixed number of years.

The Yanakoses appealed to the Superior Court, raising several constitutional challenges to the MCARE Act's seven-year statute of repose. Relevant to this appeal, the Yanakoses argued that the MCARE Act's repose period violates Article I, Section 11 of the Pennsylvania Constitution, which provides in pertinent part that "[a]ll courts shall be open; and every man for an injury done him in his lands, goods, person or reputation shall have a remedy by due course of law, and right and justice administered without sale, denial or delay." PA. CONST. art. I, § 11. Citing appellate court decisions from states with Open Courts provisions much like our own, the Yanakoses urged the Superior Court to hold that the MCARE Act's statute of repose interfered with the Article I, Section 11 right of access to the courts because its exception for foreign object plaintiffs was "arbitrary and capricious." *See* Yanakoses' Super. Ct. Brief at 43-45 (relying on *Berry v. Beech Aircraft Corp.*, 717 P.2d 670, 680 (Utah 1985)).

The Superior Court rejected the Yanakoses' argument. The panel explained that this Court, in *Freezer Storage, Inc. v. Armstrong Cork Co.*, 382 A.2d 715 (Pa. 1978), held that a twelve-year statute of repose on claims against architects and builders did not violate the Open Courts provision of the Pennsylvania Constitution.[4] *Yanakos v. UPMC*, 2017 WL 3168991, at * 7 (Pa. Super. 2017) (unpublished memorandum). The appellant in *Freezer Storage* argued only that the Open Courts provision precluded the legislature from abolishing a cause of action without implementing another remedy. *Freezer Storage*, 382 A.2d at 720. Although *Freezer Storage* rejected as nonbinding *dicta* language in earlier cases that had suggested the General Assembly might need to create

---

[4] In *Freezer Storage*, the appellant had sued the construction company that originally installed insulation material in a warehouse ceiling that eventually collapsed. *Freezer Storage*, 382 A.2d at 717. The defendant asserted the twelve-year statute of repose precluded the action because it completed the construction more than twelve years before the appellant commenced its lawsuit. *Id.* at 718.

an adequate substitute remedy in order to eliminate a common law cause of action,[5] the decision in *Freezer Storage* was narrow. We did not hold that the legislature possesses an unlimited authority to modify the common law, nor did we articulate a concrete test for measuring the lawfulness of statutes that abolish or modify common law remedies. *See id.* at 721 ("To the extent that the *dictum* [in *Dolan v. Linton's Lunch*] suggests that the Legislature may never abolish a judicially recognized cause of action, we decline to follow it."). Nevertheless, the Superior Court's conclusion that the MCARE Act's statute of repose did not violate Article I, Section 11 was based entirely upon the precept— announced in *Freezer Storage*—that the Constitution "does not prohibit the Legislature from abolishing a common law right of action without enacting a substitute means of redress." *Yanakos*, 2017 WL 3168991, at *7 (citing *Freezer Storage*, 382 A.2d at 720).

The Yanakoses filed a petition for allowance of appeal, arguing that the Superior Court misapplied *Freezer Storage*, and, in doing so, implicitly nullified the constitutional right to a remedy. We granted the Yanakoses' petition to consider whether the MCARE Act's seven-year statute of repose violates Article I, Section 11 of the Pennsylvania Constitution.[6] *Yanakos v. UPMC*, 183 A.3d 346 (Pa. 2018) (per curiam).

Before this Court, the Yanakoses argue that legislation which deprives medical malpractice victims of their right to file a civil action "must be subjected to exacting constitutional scrutiny." Yanakoses' Brief at 12. This is so, according to the Yanakoses,

---

[5] *See Dolan v. Linton's Lunch*, 152 A.2d 887, 892 (Pa. 1959) (suggesting that the General Assembly cannot "enact a law which vitiates an existing common-law remedy without concurrently providing for some statutory remedy"); *see also Greer v. U.S. Steel Corp*, 380 A.2d 1221, 1223 n.6 (Pa. 1977) (same).

[6] Because we are reviewing the trial court's order sustaining judgment on the pleadings, our standard of review is to determine whether, based on the facts the plaintiffs pled, "the law makes recovery impossible." *Cagey*, 179 A.3d at 463. Moreover, the constitutionality of a statute is a question of law, over which our standard of review is de novo, and our scope of review is plenary. *Pa. Envtl. Def. Found. v. Commonwealth*, 161 A.3d 911, 929 (Pa. 2017).

because the right to a remedy for every wrong is deeply rooted in the Anglo-American legal tradition and explicitly enshrined in the Pennsylvania Constitution. *Id.* at 14. The Yanakoses concede that the right to seek a remedy in the courts is not unfettered, and they acknowledge that the General Assembly may impose some limits on traditional common law theories of recovery. Even so, they argue that any such statutory restrictions or limits must be subject to intermediate scrutiny. *Id.* at 18-19 (recognizing this Court applied intermediate scrutiny to an Article I, Section 11 constitutional challenge in *James v. Southeastern Pennsylvania Transportation Authority*, 477 A.2d 1302, 1306 (Pa. 1984)).[7]

According to the Yanakoses, the MCARE Act's statute of repose cannot withstand intermediate scrutiny because the General Assembly clearly recognized the harshness of the statute of repose when it preserved access to courts for foreign object malpractice victims. *Id.* at 12; *see also* 40 P.S. § 1303.512(b) (providing that the statute of repose shall not apply "[i]f the injury is or was caused by a foreign object unintentionally left in the individual's body"). The Yanakoses contend that this distinction between foreign object malpractice claims and non-foreign object malpractice claims is not "substantially related to the government's important objective of reducing medical costs." Yanakoses' Brief at 35. In other words, the Yanakoses believe that the MCARE Act's statute of repose fails to withstand intermediate scrutiny "because, as applied, it bars the cause of action of some injured patients, while allowing others who were similarly injured to proceed." *Id.* at 20 (emphasis omitted). Along these lines, the Yanakoses assert that the law "goes beyond the government's legitimate purpose by unduly eliminating the important right of

---

[7] The Yanakoses argue, in the alternative, that we should apply strict scrutiny to laws that interfere with the right of access to the courts. They contend that strict scrutiny is warranted because "the right of injured parties to seek redress before a court of law" is a "fundamental right" that is "deeply ingrained in our system of liberties." Yanakoses' Brief at 21-22 (citing *Grutter v. Bollinger*, 539 U.S. 306, 326-27 (2003)).

certain victims of medical malpractice from seeking any remedy through no fault of their own." *Id.*

Appellees, on the other hand, argue that "[t]he Open Courts provision only applies when a statute extinguishes a right (such as a cause of action or defense) after that right has already accrued/vested." UPMC's Brief at 10; *see Ieropoli v. AC&S Corp.*, 842 A.2d 919, 930 (Pa. 2004) (explaining that Article 1, Section 11 prevents the General Assembly from extinguishing an already-accrued cause of action).[8] Appellees emphasize that this is not the case here because the MCARE Act went into effect in 2002--about a year before Appellees' allegedly negligent conduct. Although Appellees concede that Article I, Section 11 prevents the General Assembly from extinguishing already vested legal claims, they argue it does not prevent the legislature from abolishing a recognized cause of action altogether. *Id.* at 11. When the General Assembly does abolish a cause of action (or, as is the case here, effectively abolishes it for some class of would-be plaintiffs), Appellees argue reviewing courts should apply the rational basis test and uphold the law as long as it is rationally related to a legitimate government interest. *Id.* at 20; Physicians' Brief at 17.

Alternatively, Appellees maintain that, even if we apply some form of heightened scrutiny, the MCARE Act's seven-year statute of repose nevertheless should be upheld. UPMC's Brief at 36. In this regard, Appellees contend that the statute of repose is justified given the Commonwealth's important interest in controlling the cost of professional liability insurance and in "curtailing litigation difficulties associated with stale claims." *Id.* at 37. Appellees posit that one way to reduce malpractice insurance premiums is to reduce the

---

[8] The four Appellees in this matter have filed two separate briefs. Although Appellees all offer similar arguments, when necessary to distinguish between the two filings, we will refer to the brief filed by UPMC and University of Pittsburgh Physicians as "UPMC's Brief" and the brief filed by Dr. Shaw-Stiffel and Dr. Marcos as "Physicians' Brief."

number of professional liability claims that insurers must pay and defend against. One method to accomplish that is by enacting a statute of repose, which removes the temporally unlimited exposure that would otherwise exist because of the discovery rule to the statute of limitations.[9]

II.

A.

The Pennsylvania Constitution provides our citizens with a right to a remedy in Article I, Section 11, which states:

> All courts shall be open; and every man for an injury done him in his lands, goods, person or reputation shall have remedy by due course of law, and right and justice administered without sale, denial or delay. Suits may be brought against the Commonwealth in such manner, in such courts and in such cases as the Legislature may by law direct.

PA. CONST. art. I, § 11. In the past, this Court has recognized that Article 1, Section 11 "provided that where a legal injury is sustained, there shall and will always be access to the courts of this Commonwealth." *Masloff v. Port Auth. of Allegheny County*, 613 A.2d 1186, 1190 (Pa. 1992). Although the Federal constitution does not contain an analogous protection, the majority of state constitutions include a similar provision. *See* David Schuman, *The Right to a Remedy*, 65 TEMP. L. REV. 1197, 1201 (1992) (noting "the citizens of thirty-nine states can claim a constitutional 'right to a remedy.'").

---

[9] Although Appellees maintain that strict scrutiny is not warranted, they suggest that the statute of repose, and the exceptions to it, are narrowly tailored to further the Commonwealth's important interest in controlling the cost of medical professional liability insurance. UPMC's Brief at 37.

Historically, this Court and other state courts have traced the foundation of the "right to a remedy" to the Magna Carta.[10] *Ieropoli*, 842 A.2d at 925 (Pa. 2004) ("This provision, commonly referred to as the 'open courts' or 'remedies' clause, is derived from Magna Carta and Sir Edward Coke's Seventeenth Century commentary on the Great Charter, which was relied upon by the drafters of early American state constitutions."); Schuman, *supra*, at 1199 (explaining modern remedies clauses are derived from Lord Coke's commentary on Magna Carta); *see also Menges v. Dentler*, 33 Pa. 495, 498 (Pa. 1859) ("Parliament may disregard Magna [Carta], but our legislature must obey the constitution."). The Remedies Clause was added to the Pennsylvania Constitution in 1790. As an overview, the 1789-1790 constitutional convention:

> repealed Pennsylvania's frame of government enacted in the early months of the Revolution, replacing it with the 1790 Constitution, a document that embodied the republican principles of 1776: a Bill of Rights, an independent judiciary, and an elected legislature and executive. The new frame of government, however, significantly altered the relationship between the branches of government. Gone were the weak plural executive and the all-powerful unicameral Assembly; in their place the delegates provided for a governor equipped with veto power and a bicameral legislature. Furthermore, the convention established the direct popular election of the governor and the members of the Senate and House of Representative and provided for legislative districts based on equitable divisions of population.

Joseph S. Foster, *The Politics of Ideology: The Pennsylvania Constitutional Convention of 1789-1790*, 59 PA. HIST.: J. MID-ATLANTIC STUD. 122, 123 (1992).

---

[10] See, e.g., Lankford v. Sullivan, Long & Hagerty, 416 So.2d 996, 999 (Ala. 1982); Kenyon v. Hammer, 688 P.2d 961, 966 n.2 (Ariz. 1984); State ex rel. Cardinal Glennon Mem'l Hosp. for Children v. Gaertner, 583 S.W.2d 107, 110 (Mo. 1979).

Focusing on the Remedies Clause, the minutes of the constitutional convention reveal that the Remedies Clause was originally proposed without the second sentence limiting suits against the Commonwealth.[11] MINUTES OF THE CONVENTION OF 1789-90, at 162 (memorializing committee report of Dec. 23, 1789), *available at* https://www.paconstitution.org/wp-content/uploads/2017/11/proceedings1776-1790-1.pdf. The drafters later added a second sentence providing "[s]uits may be brought against the [C]ommonwealth as well as against other bodies corporate and individuals" without the limitation that the legislature could limit suits against the Commonwealth. *Id.* at 282 (Aug. 27, 1790 convention amendment). Subsequently, the drafters struck the phrase "as well as against other bodies corporate and individuals" and substituted "in such manner, in such courts and in such cases as the legislature shall, by law, direct." *Id.* at 291-92 (Aug. 31, 1790 convention amendment). Apart from showing how the drafters limited the right to a remedy in suits against the Commonwealth, the minutes of the convention do not contain any meaningful discussion of the Remedies Clause.

In recognizing that Article I, Section 11 protects a citizen's right to a remedy, this Court has interpreted it as an "imperative limitation[] on legislative authority, and imperative imposition[] of judicial duty." *Menges*, 33 Pa. at 498. Notwithstanding this interpretation, however, in more recent opinions, we have recognized the inherent

---

[11] As introduced, the Remedies Clause provided: "That all courts shall be open, and every freeman for an injury done him in his lands, goods, person or reputation, shall have remedy by the due course of law, and right and justice administered to him without sale, denial or delay." This language is similar to Lord Coke's commentary on the Magna Carta: "[E]very Subject of this Realm, for injury done to him [either in his goods, lands, or person], by any other Subject . . . may take his remedy by the course of the Law, and have justice, and right for the injury done to him, freely without sale, fully without denial, and speedily without delay." EDWARD COKE, THE SECOND PART OF THE INSTITUTES OF THE LAWS OF ENGLAND 55-56 (1681), *available at* http://lawlibrary.wm.edu/wythepedia/library/CokeSecondPartOfInstitutesOfTheLawsOfEngland1681.pdf.

legislative prerogative of guiding the formation of the law. *Freezer Storage,* 382 A.2d at 721. Indeed, in upholding a statute of repose that limited the liability of individuals performing building repairs, we noted the balance between the legislature guiding the law and the courts in interpreting it:

> This Court would encroach upon the Legislature's ability to guide the development of the law if we invalidated legislation simply because the rule enacted by the Legislature rejects some cause of action currently preferred by the courts. To do so would be to place certain rules of the "common law" and certain non-constitutional decisions of courts above all change except by constitutional amendment. Such a result would offend our notion of the checks and balances between the various branches of government, and of the flexibility required for the healthy growth of the law.

*Id.* In crafting the jurisprudence surrounding the remedies clause in this way, we diverged from a quid pro quo analysis of the remedies clause, where "we originally required the legislature to provide a substitute remedy anytime it eliminated a remedy." *Konidaris v. Portnoff Law Assocs.*, 953 A.2d 1231, 1240 (Pa. 2008).[12] This line of cases represented a shift away from treating the constitutional protections inherent in the remedies clause as a fundamental right. *Compare id.*, *and Freezer Storage*, 382 A.2d at 721, *with Kelly v. Brenner*, 175 A. 845, 847 (Pa. 1934) (describing the right to a remedy and open courts as a "fundamental right[] which should not be infringed upon, unless no other course is reasonably possible").

Because this Court has "curtailed the reach of the remedies clause" in the past, it follows that the right to a remedy is not a fundamental right. *Konidaris*, 953 A.2d at 1241. Nonetheless, based on the right's explicit inclusion in our constitution, coupled with its

---

[12] As the *Konidaris* Court determined, inasmuch as *Dolan v. Linton's Lunch* stood for the proposition that the legislature may not abolish a judicially recognized cause of action, it was *dicta* and was expressly not followed by this Court.

historical significance, the right to a remedy is an important right. *See* PA. CONST. art. I, § 11; *see also Smith v. City of Phila.*, 516 A.2d 306, 311 (Pa. 1986) (plurality opinion) (explaining "[b]ecause the right implicated . . . —access to the courts—is specifically limited by Art. I, § 11 of the Pennsylvania Constitution, we concluded that it is not a fundamental right").

B.

Because the MCARE Act curtails the important constitutional right to a remedy, we must apply intermediate scrutiny to determine whether the MCARE statute of repose is substantially related to achieving an important government interest. *See Craig v. Boren*, 429 U.S. 190, 197 (1976). Statutes which infringe on the right to a remedy—and other important rights—are subject to a heightened level of scrutiny. *See James*, 477 A.2d at 1306 (applying a heightened standard of review when analyzing a law which restricted the plaintiff's "important interest in access to the courts"); *see also Smith*, 516 A.2d at 311 (Noting that the "important interest in access to the courts . . . should be examined pursuant to an intermediate standard of review.").[13]

More colloquially deemed intermediate scrutiny,

> [t]his standard of review requires that the government interest be an 'important' one; that the classification be drawn so as to be closely related to the objectives of the legislation; and that the person excluded from an important right or benefit be permitted to challenge his exclusion on the grounds that in his particular case, denial of the right or benefit would not promote the purpose of the classification.

---

[13] At least four other states have applied intermediate scrutiny to invalidate statutes of repose as unconstitutional. *See Lankford*, 416 So.2d at 1001 (declaring its "review is directed to the question whether a substantial relationship exists between the [social] evil and the legislature's attempt to eradicate the evil."); *Hanson v. Williams County*, 389 N.W.2d 319, 328 (N.D. 1986) (declaring unconstitutional a products liability statute of repose because it did not have "a close correspondence to the legislative goals"); *Heath v. Sears, Roebuck & Co.*, 464 A.2d 288, 295 (N.H. 1983) (invalidating products liability statute of repose under intermediate scrutiny because it was not "substantially related to a legitimate legislative object"); *Berry*, 717 P.2d at 683 (concluding products liability statute of repose was unconstitutional because it did not "reasonably and substantially advance the stated purpose of the statute").

*Smith*, 516 A.2d at 311.[14] Under intermediate scrutiny, the proponent of the statute "bears the burden of proof on the appropriateness of the means it employs to further its interest." *Binderup v. Attorney Gen. U.S.*, 836 F.3d 336, 353 (3d Cir. 2016) (citing *Bd. of Trs. of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 480 (1989)).

That this Court in *James* has identified the Article I, Section 11 right as important and applied intermediate scrutiny in evaluating challenges implicating that right belies the dissenting opinion's position that intermediate scrutiny is "manifestly incompatible with our existing Remedies Clause jurisprudence[.]" Dissenting Op. (Wecht, J.) at 9.[15] Further, the dissent's recognition that the 1790 Constitution was a response to unchecked legislative power is in tension with its adoption of a "heightened scrutiny" test that is deferential to legislative enactments. *Compare id.* at 5 *with id.* at 9-10. The dissent's "heightened scrutiny" is a hybrid test that subjects the legislature's goal to higher scrutiny ("response to a clear social or economic need") but does not similarly subject the legislature's means to any additional scrutiny ("a rational and non-arbitrary connection to that need"). *Id.* at 9; *see also Kramer v. Workers' Comp. Appeal Bd. (Rite Aid Corp.)*, 883 A.2d 518, 534 (Pa. 2005) (noting rational basis test is deferential to legislative enactments). Under this "heightened scrutiny," as long as the legislature seeks to ameliorate a clear social or economic need, the means it selects, i.e. the legislation, are

---

[14] Unlike the rational basis test, intermediate scrutiny does not evaluate the reasonableness or arbitrariness of legislation. *See, e.g.*, *William Penn Sch. Dist. v. Pa. Dep't of Educ.*, 170 A.3d 414, 458 (Pa. 2017) ("If the rational basis test applies, then the classification in question must be 'reasonable rather than arbitrary and bear a reasonable relationship to the object of the legislation.'" (quoting *Commonwealth v. Albert*, 758 A.2d 1149, 1151 (Pa. 2000)); *Commonwealth v. Parker White Metal Co.*, 515 A.2d 1358, 1365 (Pa. 1986) (explaining rational basis analyzes the legislation's reasonableness, arbitrariness, and relation to its objective).

[15] We recognize *James* involved an equal protection challenge invoking the right to a remedy, and we find no reason to treat differently a direct challenge under Article I, Section 11.

reviewed under a rational basis standard to determine if they are rational and non-arbitrary. Pennsylvania courts have never utilized such a test in connection with the Remedies Clause or otherwise. Further, we reject this test because it does not adequately safeguard the important right to a remedy.

III.

Applying intermediate scrutiny, we conclude the governmental interest in controlling the rising costs of medical malpractice insurance premiums and of medical care is important. However, the MCARE Act's statute of repose as enacted is not substantially related to achieving those goals. Generally, statutes of repose are intended to provide actuarial certainty to insurers in calculating insurance premium rates:

> Perhaps the most noted justification for statutes of repose is the desire to alleviate the insurance problem facing manufacturers, the medical profession, and the construction industry. Responsibility for older products, latent medical problems, and 'permanent' or durable improvements expose these groups to abnormally long periods of potential liability and unusually large numbers of potential plaintiffs. Proponents contend that this 'long-tail' problem is the principal culprit in the alleged 'insurance crisis.' Theoretically, by cutting off a defendant's liability after a given number of years, statutes of repose lead to more certain liability and thus provide greater actuarial precision in setting insurance rates. More certain liability and stabilized insurance rates in turn facilitate efficient business planning and ultimately benefit businessmen, professionals, consumers, and the economy.

Josephine Herring Hicks, *The Constitutionality of Statutes of Repose: Federalism Reigns*, 38 VAND. L. REV. 627, 632-33 (1985) (footnotes omitted).

Indeed, a review of the legislative history of the MCARE Act indicates this was the purpose of including a statute of repose. Representative Curtis Schroder, who sponsored the amendment introducing a statute of repose, stated:

> Well, right now, of course, there is a 2-year statute of limitations with a discovery rule, and the problem with that is,

it is very difficult for any malpractice insurer to come up with accurate rates based upon any predictability, any stability or certainty, and part of our whole effort here is to provide the stability and predictability that malpractice carriers will need and have told us that they will need to come back into the State of Pennsylvania and to help reduce this crisis.

H.B. 1802, House Journal, Jan. 29, 2002, at 116.

At the time of Representative Schroder's remarks, the proposed bill contained a four-year statute of repose. H.B. 1802, 186th Leg., Printer's No. 3202, at 99 (Pa. Jan. 29, 2002). It did not include a time-limit for foreign objects cases. *Id.* Further, minors whose claim accrued when they were younger than 14 had to commence an action no later than four years from when their parent or guardian knew or should have known of the cause of action, or four years from their fourteenth birthday, whichever was earlier.[16] *Id.* Addressing a question about the limitation on minors' causes of action, Representative Schroder responded:

[T]he rationale was to try to establish a reasonable number that will, you know, provide predictability and stability in predicting these claims so the proper underwriting can occur and that the current system has really no way of predicting, you know, when or if or how long into the future a lot of these cases will be brought about with regards to minors. So it was an area that we felt we needed to provide some stability and predictability in, and 4 years, I am not saying there is a magic

---

[16] The American Medical Association issued model legislation, which contains a shorter repose period. It provided all causes of action must be commenced within two years, except foreign objects cases, which must be commenced within four years: "The time within which an action must be commenced shall not be extended by any of the provisions of this section including those relating to the discovery of foreign objects beyond four years after the date of the act, omission or failure giving rise to such action." Am. Med. Ass'n, Dep't of State Legislation, *Statute of Limitations in Medical Injury Cases* (1985), *available at* https://www.ama-assn.org/sites/ama-assn.org/files/corp/media-browser/specialty%20group/arc/limitation.pdf. Further, it applied to "all persons regardless of minority or other legal disability, except that a minor under the full age of eight (8) years shall have until his/her tenth birthday to file suit based on a cause of action which accrued prior to his/her eighth birthday."

number to it, but it seemed like a reasonable resolution to that issue.

H.B. 1802, House Journal, Jan. 29, 2002, at 116.

Through the legislative process, the Senate removed the four-year statute of repose and instead provided that all causes of action must be "commenced within the existing applicable statute of limitations." H.B. 1802, 186th Leg., Printer's No. 3320, at 102 (Pa. Feb. 12, 2002). Thereafter, the Senate Committee on Rules and Executive Nominations reinserted a seven-year statute of repose, which the General Assembly enacted. H.B. 1802, 186th Leg., Printer's No. 3402, at 39-40 (Pa. Mar. 13, 2002). It provides:

> **§ 1303.513. Statute of repose**
>
> **(a) General rule.--**Except as provided in subsection (b) or (c), no cause of action asserting a medical professional liability claim may be commenced after seven years from the date of the alleged tort or breach of contract.
>
> **(b) Injuries caused by foreign object.--**If the injury is or was caused by a foreign object unintentionally left in the individual's body, the limitation in subsection (a) shall not apply.
>
> **(c) Injuries of minors.--**No cause of action asserting a medical professional liability claim may be commenced by or on behalf of a minor after seven years from the date of the alleged tort or breach of contract or after the minor attains the age of 20 years, whichever is later.
>
> **(d) Death or survival actions.--**If the claim is brought under 42 Pa.C.S. § 8301 (relating to death action) or 8302 (relating to survival action), the action must be commenced within two years after the death in the absence of affirmative misrepresentation or fraudulent concealment of the cause of death.
>
> . . .
>
> **(f) Definition.--**For purposes of this section, a "minor" is an individual who has not yet attained the age of 18 years.

40 P.S. § 1303.513.

The effect of the seven-year repose period for most medical malpractice actions is to limit the "discovery rule" to seven years.[17] In most cases, if a malpractice victim discovers the injury and its cause within seven years, the victim may bring a timely lawsuit; however, after seven years, the statute of repose bars the victim's action. Additionally, foreign objects cases are exempt from the statute of repose, and minors can file a lawsuit either seven years from the date of injury or until their twentieth birthday, whichever is later.[18] Thus, the statute of repose prevents most medical malpractice victims, except foreign objects plaintiffs and certain minors, from exercising the constitutional right to a remedy after seven years.

In order for this statutory scheme infringing on the Article I, Section 11 right to a remedy to pass intermediate scrutiny, it must be substantially or closely related to an important government interest. As noted, the goal of the statute of repose was to control medical malpractice premium rates by providing actuarial certainty. Accordingly, the question is whether the seven-year statute of repose is substantially related to controlling the cost of medical malpractice premium rates. Under intermediate scrutiny, the party defending the statute's constitutionality has the burden to demonstrate the legislation is substantially related to its purpose. *See, e.g.*, *United States v. Virginia*, 518 U.S. 515, 533 (1996); *Miss. Univ. for Women v. Hogan*, 458 U.S. 718, 724 (1982); *see also*

---

[17] "[T]he discovery rule tolls the statute of limitations where the plaintiff is reasonably unaware that he has been injured and that his injury has been caused by another party's conduct." *Nicolaou v. Martin*, 195 A.3d 880, 892 (Pa. 2018).

[18] Minors under 13 years old at the time of their injury have more than seven years to commence their actions because the statute of repose permits them to file a lawsuit until their twentieth birthday. For example, a 12-year-old malpractice victim would have until their twentieth birthday to file suit, which is more than the seven-year repose period. Thus, the younger a minor is at the time of the alleged malpractice, the longer the minor has to timely file suit before the statute of repose bars their claim.

*Binderup*, 836 F.3d at 353. To meet this burden, the statute's proponent "can rely on a wide range of sources, including legislative history, empirical evidence, case law, and even common sense, but it may not 'rely upon mere anecdote and supposition.'" *Tyler v. Hillsdale County Sheriff's Dep't*, 837 F.3d 678, 694 (6th Cir. 2016) (quoting *United States v. Carter*, 669 F.3d 411, 418 (4th Cir. 2012)).

In this case, there was no evidence to show the initially proposed four-year statute of repose would provide actuarial certainty, except that it "seemed like a reasonable resolution" to "provide some stability and predictability" to insurers. H.B. 1802, House Journal, Jan. 29, 2002, at 116. Moreover, there is no evidence in the legislative history as to how the General Assembly arrived at a seven-year statute of repose with exceptions for foreign objects cases and minors. The legislature did not cite any statistics on the number of medical malpractice actions that are commenced after seven years of the occurrence giving rise to the action.[19] There is no indication that such a time period, as opposed to a longer or shorter period, will have any effect on malpractice insurance costs.

Likewise, the parties in their current briefing failed to suggest the seven-year repose period has any substantial relationship to the legislative goal of controlling malpractice insurance costs. *See* UPMC's Brief at 36-37; Physicians' Brief at 19. Appellees narrowly focus on the foreign objects exception, arguing that exception is substantially related to an important government interest. However, the proper focus is on the manner in which the statute of repose infringes on the Article I, Section 11 right to

---

[19] The dissent mischaracterizes our review as imposing a requirement on the legislature to provide evidence in support of its legislation. To be clear, Appellees have the burden to show the challenged statute of repose passes intermediate scrutiny. The legislative history could be a source of evidence establishing a substantial relationship. However, here, the legislative history does not demonstrate any justification for the seven-year statute of repose. While this is not dispositive, it does not support Appellees' position. *See FCC v. League of Women Voters of Cal.*, 468 U.S. 364, 393-94 (1984) (looking at legislative history in analyzing whether legislation substantially advanced governmental purpose).

a remedy: the statute permits malpractice victims who discover their injury and its cause within seven years, foreign objects plaintiffs, and minors to exercise their constitutional right to a remedy; on the other hand, the statute deprives malpractice victims who do not discover their injury or its cause within seven years of their right to a remedy. Appellees have not demonstrated that this seven-year period is substantially related to the goal of controlling insurance premiums.[20]

Additionally, the statute of repose as enacted does not offer insurers a definite period after which there will be no liability because it exempts foreign objects cases and minors, so insurers still have to account for those unpredictable "long-tail" cases in calculating malpractice insurance premiums. Therefore, the seven-year statute of repose, with exceptions for foreign objects cases and minors, is not substantially related to controlling the cost of malpractice insurance rates by providing actuarial predictability to insurers. Accordingly, we conclude the MCARE Act's statute of repose is unconstitutional, reverse the order of the Superior Court, and remand for further proceedings.

Justices Todd and Dougherty join the opinion.

Justice Donohue joins Part I of the opinion, as well as Part III to the extent specified in her responsive opinion, and files a concurring and dissenting opinion.

Justice Wecht files a dissenting opinion, joined by Chief Justice Saylor and Justice Baer.

---

[20] For these reasons, the statute of repose is not constitutional even under the dissent's formulation of "heightened scrutiny" because the seven-year limitation is arbitrary. *See also DeYoung v. Providence Med. Ctr.*, 960 P.2d 919, 925 (Wash. 1998) (en banc) (concluding an eight-year statute of repose for medical malpractice claims was unconstitutional under the rational basis test because "[t]he relationship between the goal of alleviating any medical insurance crisis and the class of persons affected by the eight-year statute of repose is too attenuated" where evidence presented to the legislature showed less than 0.5 percent of claims were reported more than eight years after the underlying occurrence).