# Baggs's Appeal.

*Bill of Review on account of Executor, when refused.—Special Bill of Review allowed by Act of Assembly, unconstitutional.—Judicial and Legislative Functions distinguished.*

1. A bill of review will not lie on an account of an administrator finally settled eleven years before by decree of the court, because barred by the Act 13th October 1840, requiring bills of review to be brought within five years after final decree, and because the claim for distribution made therein was not presented within seven years after the decedent's death, as required by Act 8th April 1833.

2. An Act of Assembly passed nearly twelve years after distribution of a decedent's estate and final decree thereon, directing the Orphans' Court, on the petition of any party interested, to grant a review of the administrator's account and of the decree of distribution with the same effect as if application had been made within five years after decree, is unconstitutional and void.

3. The functions of the legislature and the judiciary defined, discussed, and distinguished.

APPEAL from the Orphans' Court of *Allegheny county.*

This was an appeal by Mary Baggs and Sarah Blessing from the decree of the Orphans' Court on the account of John H. Baughman, administrator of Andrew Hendrickson, deceased.

The case was this:—Andrew Hendrickson died about 15th February 1844, unmarried without issue, leaving two sisters of the whole blood, and one half-sister the daughter of his mother. He died intestate, leaving personal estate for distribution. John H. Baughman was appointed administrator of the decedent. On the 14th February 1845, the administrator filed his account, showing the amount in his hands for distribution, and on the 16th August 1845, the court appointed an auditor to distribute said amount. The only party in interest represented before the auditor was Elizabeth Baughman, a sister of the full blood of decedent. The auditor was of opinion that under the testimony before him, a legal presumption of the death of the other sister of the full blood arose, and he did not appear to have heard of the half-sister. On 4th November 1846, he filed his report awarding the whole amount for distribution to Elizabeth Baughman, which report was confirmed by the court, and on 25th November 1846, the administrator paid over the amount in his hands, as therein directed. Between eleven and twelve years afterwards, the parties in interest who had not attended before the auditor, procured the passage of an Act of Assembly, dated the 22d day of April 1857 (Pamphlet Laws 280), which enacts, "That it shall be the duty of the Orphans' Court of Allegheny county, on the petition of any party in interest, to grant a review of the administration account and auditor's report, and *decree of distribution* thereon, of John H. Baughman, administrator of Andrew Hen-

[Baggs's Appeal.]

drickson, late of Versailles township, Allegheny county, deceased, with the same effect as if application had been made within five years next after such decree," &c. Under this act an auditor was appointed, who made a report distributing part of said estate to parties who had not appeared before the former auditor. These new parties made no application for a review of the report of the former auditor, within five years after it was confirmed, but stood solely upon the Act of Assembly of 22d April 1857, as the means of enforcing their claims in this case.

On exception filed by the distributee in the first report, the court below (RITCHIE, A. J.), set aside the report of the auditor who had been appointed under the special Act of Assembly of April 22d 1857, which was assigned for error here.

*Purviance & Shiras* for appellants.—The only point to be determined by this court, is the constitutionality of the act giving the Orphans' Court power to grant this review.

The Act of October 1840 did not confer, but took away power from the Orphans' Court. The present act restores, for the purposes of this case, the power taken away by the Act of 1840, to grant a review after the expiration of five years. It does not direct the performance of a judicial function in a particular way. It does not rest on the doctrine of Bradlee and Brownfield, that the legislature posseses a mixed jurisdiction, partly legislative and partly judicial. It simply removes a barrier which prevents the court from granting such relief as justice and equity may require ; in which respect it differs from De Chastellux *v.* Fairchild, 3 Harris 18. The act interferes with no vested rights. The administrator, standing in the position of trustee, could have none against the appellee. And Elizabeth Baughman, the original distributee, is liable on her refunding bond to the administrator, to refund to meet any other debt or demand that may be recovered against the estate or for the payment of legacies : Thomas *v.* Riegle, 5 Rawle 206. It must be a clear and unequivocal case which will justify the court in declaring an Act of Assembly unconstitutional : Kilpatrick *v.* Commonwealth, Legal Intelligencer, October 29th 1858 ; Eaken *v.* Raub, 12 S. & R. 330 ; 3 Yeates 493 ; 12 S. & R. 330; 8 W. & S. 386 ; 1 Binney 416 ; 4 Id. 123 ; 3 S. & R. 178 ; 4 W. & S. 418.

Where a right exists without a remedy, the legislature may lawfully provide one : 2 Watts 443 ; 9 Barr 110 and 446 ; 3 Harris 172 ; 7 Watts 301 ; 9 Barr 467 ; 10 S. & R. 97 ; 15 Id. 72 ; 17 Id. 64 ; 10 Id. 101 ; 16 Id. 37 ; 1 Watts 330 ; 3 Wh. 84 ; 5 Barr 145 ; 9 Id. 99 ; 2 Harris 157 ; 3 Id. 165.

*Penny & Sterrett*, for appellees, cited and relied on the cases in 7 WR.—33

4 W. & S. 469, 6 Barr 141, and 7 Harris 431, as to the ordinary powers of the Orphans' Court to authorize a bill of review. And on the question of the constitutionality of the Act of April 22d. 1857, they cited O'Conner *v.* Warner, 4 W. & S. 227; Irvine's Appeal, 4 Harris 266; and De Chattellux *v.* Fairchild, 3 Id. 18.

The opinion of the court was delivered, January 5th 1863, by LOWRIE, C. J.—This is a bill of review in the matter of the account of J. H. Baughman, administrator of Andrew Hendrickson, in which the petitioners claim a share of the estate of the decedent as next of kin. It was presented thirteen years after his death, and eleven years after the estate had been distributed and finally settled by the decree of the court. It is therefore barred by the Act of 8th April 1833, § 19, relating to the distribution of intestates' estates, and requiring such claims to be presented within seven years after the intestate's death; by the Act of 13th October 1840, § 1, requiring that bills of review shall be brought within five years after the final decree; and without this, by the limitation of seven years for writs of error, which is received as a binding analogy for bills of review, when there is no positive rule given by the legislature.

The petitioners lived in a distant part of the state, and did not hear of the intestate's death until long after those periods had elapsed; but it is not pretended that these facts are sufficient to relieve their case from these limitations of the right of action. It stands therefore decreed in due course of law, and according to the general law of the land, finally decreed that this administrator has faithfully and fully performed all his duties as administrator, and that he and his sureties are finally discharged from all further accountability in relation to this estate. How do the petitioners attempt to evade this decree?

They found their petition or bill of review entirely on an Act of Assembly, passed 22d April 1857, near twelve years after the final decree, which makes it the duty of the court, on the petition of any party interested, to grant a review of the account, and of the decree of distribution, with the same effect as if application had been made within five years after the decree. This is a very clear and peremptory legislative injunction, unevadable by any skill of interpretation. Yet it does not affect the proviso of the Act of 1840, which limits the bill of review to cases where the balance has not been actually paid by the accountant, as was the fact here. This proviso might produce injustice in some cases, if there could be no bill of review, *as against the distributees*, in case of payment to them; but we pass this. The Orphans' Court obeyed the legislative injunction by granting the review, and, on final hearing, dismissed the bill on the ground that the case was

entirely a judicial one, and the legislature had no authority to interfere.

This principle seems to us just as plain as the injunction of the Act of Assembly, and much more authoritative; for it is part of our frame of government on which the legislature itself depends. There can be no constitutional objection to the commands of the legislature, or of any one else, to the courts to hear any motion or petition that any party may choose to present; but if the courts are the judicial authority of the land, no one has any authority to direct them what disposition they shall make of any case or question that comes before them. And any commands about such matters, other than those contained in the general law of the land, are quite useless; for the courts are, by the constitution, open to everybody appearing in any regular way. And they hear everybody that comes; though in cases very plain or very absurd they may not hear them long, and may dismiss their motion or petition without hearing the other side.

There ought to be no arbitrary governmental dealing with private rights; to prevent this is one of the principal purposes of the separation of legislative and judicial functions in the government. It is in general guarded against by allotting to each department its appropriate functions, and by the assurance of the constitution of open courts, where every man for every injury shall have remedy by due course of law. A man's rights are not decided by due course of law, if the judgment of the courts upon them may be set aside or opened for further litigation by an Act of Assembly. That would be a plain violation of the due course of law, a departure from the functions of legislation, and an assumption of those of jurisdiction.

It is not by its author, but by its nature, that we judge of the arbitrariness of a law. It may be arbitrary when passed as well by a democratic legislature as by a despot, though not so likely to be passed. Either may legislate in disregard of the well-settled and approved usages and customs of the people, and that is arbitrary; but that is not the kind of arbitrariness that is in question here, for arbitrariness in legislation is not always unconstitutional.

Any form of direct governmental action on private rights, which, if unusual, is dictated by no imperious public necessity, or which makes a special law for a particular person, or gives directions for the regulation and control of a particular case after it has arisen, is always arbitrary and dangerous in principle, and almost always unconstitutional. But that is not arbitrary nor unconstitutional which, within the sphere of politics, makes general laws for all cases in the class that is at the time the subject of legislation, if it be in reasonable harmony with

the intelligence, usages, and customs of the people. And that is not arbitrary that decides cases according to general laws passed before the cases arise, or according to the usages and customs of the country, or, in the absence or inapplicability of either of these, according to the general principles or well-settled analogies of the law.

Properly speaking, all *laws* are rules for *classes* of cases, and never for a particular case or instance. That can be only a rescript, judgment, or decree that decides a particular case, or any part of it, and it is naturally and essentially the result of judicial and not of legislative functions, and comes after and not before the case arises, and after and not before the hearing of the parties.

Legislation gives us standards of weight, measure, and value; but it weighs, measures, and values nothing. And so, with custom and usage, it gives us the rule or standard of civil conduct and civil rights; but it never judges under the rule, or applies its standards to any given case. It gives the rules and implements of justice, but uses none of them. It hears no parties, just because it has no particular case before it. Jurisdiction is always engaged in applying the standards of right to particular cases of disputed right, and therefore always deals with parties, and therefore always hears them.

In general outline, though not always in practice, these two functions are quite as distinct as those of the abstract mathematician and of the practical surveyor or astronomer, as those of coinage and of commerce, as those of the machinist and of the operator of the machine, as those of the general terms of language and of the application of them to things, or as those of the general laws of thought and of their application in reasoning. It is practice, however, and not knowledge that is thus divided and restricted. To be truly intelligent and orderly, each department ought to understand, but not to undertake the functions of the other. In the present case the practical distinction seems to us quite as clear as the theoretical one. We are dealing with a simple legislative decree in a particular case, involving no confusion of theory and practice, and having no shade of general rule about it, and it is plainly a departure from legislative functions.

It is argued that the legislature has entire control over the remedies of the law, and may alter them at pleasure; and that all statutes of limitation, being remedial in their nature, fall under this authority. There is general truth in this, and we need not stop to show how far its generality is to be restricted, except in its application to this case.

There is nothing plainer in the bill of rights than the principle that all men must stand on an equality before the judicial tribunals,

and they do not stand so, if the judiciary is bound to admit an inequality created by a legislative decree, by which a statute of limitation or any other element of the remedy is set aside or altered for any particular case or person, so as to affect the right. However inexpedient any given change may be, none can complain of inequality in it, if it be made to apply to all alike. And people bear with patience even very defective laws, when they operate alike on all; because equality of administration is a large and essential element of justice.

However generous and just it would be for the parties to remedy such a misfortune as seems to have occurred in this case, it would not be so for the state to do it. It would not be generous, for it would be dealing only with other people's rights and property, and not with its own. And it would not be just; for that legislation cannot be just that gives opposite rules for distinct cases in the same class, that excludes any case from the class to which it naturally belongs, that says to persons in general, you shall have the protection that naturally arises from lapse of time, and to some particular person you shall not have it. This is nothing like " the due course of law."

We could never acquire the idea of justice, if there were no laws to regulate social intercourse, and if all human conduct were mere arbitrariness. Justice means treatment according to law, *some* law taken as a standard, and that is the most complete civil justice, that is according to the best civil laws that the given society knows how to provide. And it being of the very nature of all law, physical, moral, social, and civil, that it regulates facts, things, and persons by classes, that is not law-making at all, but only a command, that directs a particular act to be done.

We know of no principle or law in the constitution of the legislature, or of the courts, that authorizes the issue of the command contained in this Act of Assembly, or that entitles the courts to obey it, and the petitioners have no remedy for their loss in this form. The decree below is very defective in form in not dismissing the petition, which was evidently intended by the setting aside of the auditor's report. But we treat it according to the intention, hoping for more accuracy hereafter.

> Decree affirmed, and petition dismissed at the costs of the appellant.